# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1896.

Martin v. Baker *et al.*, *Appellants*.

Division One, October 15, 1896.

1. **Equity**: CONFIDENTIAL RELATION: ABUSE OF CONFIDENCE. Wherever two persons stand in such relation that, while it continues, confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the one so availing himself of the position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation existed.

2. ———: DEED: UNDUE INFLUENCE. A deed by a widow, eighty years of age, to her daughter, of substantially all her property to the exclusion of another daughter, *held* procured by undue influence, and the decree of the lower court setting it aside approved.

*Appeal from Andrew Circuit Court.*—Hon. William S. Herndon, Judge.

AFFIRMED.

*Casteel & Haynes* for appellants.

(1) The first deed was for a valuable consideration, and "neither old age, disease, mental weakness, inade-

(495)

quacy of consideration, nor confidential relations, are *per se* independent and substantial grounds upon which courts of equity will interfere to relieve a party from a contract voluntarily entered into, for a valuable consideration." *Taylor v. Crockett*, 123 Mo. 300; *Likins v. Likins*, 122 Mo. 279; *Pennington v. Stanton*, 28 S. W. Rep. 1067; *Dickson v. Kempinksky*, 96 Mo. 253. (2) Mrs. Baker was getting old and needed attention; she had property and desired to use it in procuring that attention; so she made the contract for her support and maintenance, and deeded to defendants one hundred and fifty acres of land as the consideration, and being just in itself and consequences, the deed will not be set aside on the ground of undue influence. *Turner v. Turner*, 44 Mo. 535; *Moore v. Moore*, 67 Mo. 192; *Hamilton v. Armstrong*, 120 Mo. 597; *Pennington v. Stanton*, above cited. (3) Mrs. Lydia L. Baker had the right as a matter of law, to do with her property as she pleased and this to the exclusion of heirs. *Jackson v. Hardin*, 83 Mo. 184; *Elliott v. Welby*, 13 Mo. App. 20; *Mueller v. Ass'n*, 5 Mo. App. 397; *Maddox v. Maddox*, 114 Mo. 41; *Keithley v. Keithley*, 85 Mo. 223; *Moore v. Moore*, 67 Mo. 198; *Uhlick v. Muhlke*, 61 Ill. 523; *Henser v. Harris*, 42 Ill. 425. (4) If Mrs. Lydia L. Baker had mind and memory sufficient to comprehend and understand the value of her property and the condition and situation of those who had claims on her bounty, then she had a mind sufficient to make the deeds. *Moore v. Moore*, 67 Mo. 192; *McKinney v. Hensley*, 74 Mo. 326; *Keithley v. Keithley*, 85 Mo. 217; *Benoist v. Murrin*, 58 Mo. 322; *Jackson v. Hardin*, 83 Mo. 175; *Meyers v. Hauger*, 98 Mo. 433. (5) The mere fact that the mind of a person is impaired by age or disease does not render such person incompetent to make valid contracts. Parsons on Contracts [7 Ed.], 383; *Cutler v. Zollinger*, 117 Mo. 92. (6)

Even in monomania or partial insanity, to invalidate an instrument, it must appear that the partial insanity related to the subject of the contract in question, and the burden is on the party asserting it, to prove its existence at time of making contract. 1 Wharton & Stille's Medical Jurisprudence, sec. 3; *Benoist v. Murrin*, 58 Mo. 307; *Cutler v. Zollinger*, 117 Mo. 9. (7) Testing Mrs. Lydia L. Baker's mental capacity, by plaintiff's witnesses alone, she had more mental vigor than was possessed by either of the grantors in the following cases, to wit: *Moore v. Moore*, 67 Mo. 192; *McKinney v. Hensley*, 74 Mo. 136.

*David Rea* for respondent.

(1) The law imposes upon every person occupying a relation of confidence to another who receives a gift from the latter the burden of showing, the absolute fairness and validity of the transaction was entirely free from undue influence. *Gavins, Adm'r, v. Williams*, 44 Mo. 465; *Cadwallader v. West*, 48 Mo. 483; *Yosti v. Laughlin*, 49 Mo. 594; *Gay v. Gillilan*, 92 Mo. 250; *Hall v. Knappenberger*, 97 Mo. 509; *Bogie v. Nolan*, 96 Mo. 85; *McClure v. Lewis*, 72 Mo. 314; *Bradshaw v. Yates*, 67 Mo. 221. (2) Courts have declined to limit the operation of the foregoing rule by undertaking to name the relations to which it applies. They have said that the rule in its application is as broad as the mischief it is designed to meet, and that the relief stands upon a general principle applying to all the variety of relations in which dominion may be exercised by one person over another. *Gay v. Gillilan*, 92 Mo. 250; *Hall v. Knappenberger*, 97 Mo. 509; Hare and Wallace's Notes, page 61. (3) Mrs. Lydia L. Baker had two daughters and she disinherited one of them, giving all of her property to the other. Such gross

inequality in the disposition of her property, places on Martha, the recipient of her mother's gifts, the *onus* of establishing the validity of such gifts. *Gay v. Gillilan*, 92 Mo. 251. (4) It became material to know what were the previous purposes and state of mind of Lydia L. Baker, and statements made by her at, before and after the making of the deeds in controversy are competent evidence for those purposes. *Thompson v. Ish*, 99 Mo. 160; *Rule v. Maupin*, 84 Mo. 587; *Twigley v. Cowgill*, 48 Mo. 291; *Gibson v. Gibson*, 24 Mo. 227. (5) Contents of prior wills which have been revoked may be given in evidence to show the fixed purpose and intention of the testator. *Thompson v. Ish*, 99 Mo. 160; *Thomas v. Stump*, 62 Mo. 278; *Muller v. Association*, 73 Mo. 242.

MACFARLANE, J.—Plaintiff and defendant Martha Baker are sisters, the only children of Lydia L. Baker, deceased, and defendant Henry Baker is the husband of the said Martha.

On the eighteenth of August, 1890, the said Lydia L. Baker, then a widow, executed and delivered to defendants a quitclaim deed conveying one hundred and sixty acres of land known as the home place of the grantor. The consideration expressed in this deed was $1 and an agreement on the part of the grantees to support and maintain the grantor during her life. The grantor retained a life estate in the land. The grantees were to have the possession and use of the land, unless the contract of maintenance was not kept, in which case the grantor reserved the right to resume possession and control. The said contract is declared in the deed to be the real consideration.

On the tenth day of March, 1891, the said Lydia L. Baker executed and delivered to defendant Martha Baker, a deed to one hundred and twenty acres of addi-

tional land situate in section 31, township 59, range 36. The consideration in this deed was $1 and love and affection. A life estate was also retained by the grantor in this land.

On the twenty-fifth of May, 1891, defendants conveyed all of said land, and other land belonging to the wife, to one William Herren, who, on the same day, conveyed it back to them in joint tenancy.

The said Lydia Baker died in December, 1891, and this suit was commenced in February, 1892, the object of which is to set aside and annul these deeds on the ground that they were procured by fraud and undue influence of defendant, and that the grantor was at the time of unsound mind and memory and incapable of making them.

The answer of defendants contained a specific denial of each charge of fraud and affirmative allegations to the effect that the deeds were made without solicitation, fraud, or influence on the part of defendants, and that the grantor was at the time of sufficient mental capacity to make the deeds.

The evidence shows that the said Lydia Baker owned in her own right the home farm at the death of her husband, which occurred in 1879, and received in her own right from her husband's estate, two hundred and forty acres of land additional. Of this, one hundred and twenty acres was conveyed to defendants by the deed of March 10, 1891. The estimated value of all the land was $10,000, and of the home place $5,000 or $6,000.

The said Lydia after the death of her husband, continued to reside on the home farm until 1890. The first six or seven years of this period defendants lived with her. At the end of that period they moved to and continued to reside on the farm of the wife in the same neighborhood.

Plaintiff first married a man by the name of Brown, and in 1873 moved with her husband to Colorado. Her husband died in 1878, and in 1886 she married Martin. In 1890 she and her husband returned to Missouri to live.

In 1881 the said Lydia took one of the daughters of Mrs. Brown to live with her, where she remained until she married in 1890. Soon thereafter the said Lydia went to the home of defendants, where she lived until her death.

The first of the deeds was made in a month or two after she went to the home of defendants.

Plaintiff has five children, some of whom are minors. Defendants are childless.

The evidence shows that the said Lydia was, at the death of her husband, a woman of good physical health, strong mind, and good business capacity, but that some years before her death she had suffered from slight attacks of paralysis and was quite feeble physically. At her death she was about eighty years old.

In the year 1885 or 1886 deceased made a will by which she devised the "home place" and about forty acres of the remaining land to plaintiff and the rest of the land consisting of two hundred acres she devised to defendant Martha for life, "and should she die without leaving children to inherit, said land shall descend to" plaintiff, or "her heirs in case of her death." The will also gave to the five children of plaintiff $150 each.

Another will was made about twelve or eighteen months after the first. By this will she devised the home place to defendant Martha with the same limitation as contained in the first; the other land she devised to plaintiff. The personal property was disposed of about as in the first. No copy of this will was preserved and its exact provisions could not be recalled by the witnesses.

In March, 1891, deceased made to defendant Mar-

tha Baker the deed to one hundred and twenty acres
of land. On the same day she made a deed to plain-
tiff for the other one hundred and twenty acres. This
deed contained certain restrictions, on account of
which defendant refused to accept it. On the day the
deed to the home place was made to defendants, August
19, 1890, the grantor assigned to defendant Henry
Baker a note for $1,481.

On the twenty-fifth day of May, 1891, Judge
William Herren, at the request of Henry Baker, went
out to the home of the latter, and, while there prepared
the following deeds, which were afterward executed
and delivered: Deed from Lydia L. Baker to William
Herren one hundred and twenty acres of land. This
included all the land she owned not theretofore deeded
to defendants. The consideration was $1. Deed from
defendants, as husband and wife, to William Herren
conveying three hundred and sixty acres, being the
same land previously conveyed to the grantors by
Lydia L. Baker. Deed from William Herren to de-
fendants in joint tenancy, conveying the same land.
Defeasance which recited the deed from Lydia Baker
to William Herren, that the grantee held the land for
sale, and that on demand he should convey the same,
or pay the proceeds thereof, to defendant Martha Baker.

On the twenty-sixth of the same month Judge
Herren prepared wills for all three of the parties. The
will of Lydia L. Baker recited that she had dis-
posed of all her real estate and provided for her own
support during her life. It recited also that she had
already fully provided for her daughter Mary Martin
(plaintiff) and gave her $5. All the rest of her prop-
erty she gave her daughter (defendant) Martha Baker.
The personal property was estimated at about $3,000.
The will of Martha Baker gave all her estate to her
husband, defendant Henry Baker, and provided that

what should remain at his death should go to one Otto Bly. The will of Henry Baker gave all his real estate to his wife, should she survive him.

A great deal of evidence was introduced by each party bearing upon the mental capacity of Mrs. Baker to make the deeds in question. As is usual in such cases the evidence was very conflicting. It is too voluminous to be given in detail. That deceased was old, and physically feeble, is not disputed. That her mental powers were much impaired is well established. It may also be said that there was no direct evidence that defendants or either of them exercised any undue and improper influence over her in order to secure the deeds.

The court was requested to find, and state in writing, the conclusion of fact from all the evidence.

Pursuant to this request the court found, and so declared, that at the date of the respective deeds the said Lydia L. Baker did not have sufficient mental capacity to transact her business, or to intelligently execute the deeds and was not of sufficient mind to take into consideration the nature, extent or value of her property, or the property transferred. The court also found that the deeds were executed by her by reason of undue influence on the part of defendants and were not her free act and deed.

To these conclusions of fact defendant duly excepted.

Judgment was for plaintiff, and defendants appealed.

There may be some doubt whether the conclusion of the court that the grantor was not possessed of sufficient mental capacity to make the deeds in question was sustained by the weight of the evidence of the expert and other witnesses who testified on the question. But considering the oral evidence in connection with

the undisputed facts and circumstances, we entertain no doubt whatever of the correctness of the conclusion that the deeds were the result of the exercise of improper influence of the grantees.

Mrs. Baker had the undoubted right, if possessed of sufficient mental capacity, to dispose of her property as she did by the deeds in question, though the effect may have been to put it out of her power to make provision for one of her daughters who appears to have been most in need of assistance. But her acts must have been her own and not that of others.

It may be said further that if the acts were her own, no one has the right to inquire into the motives which may have controlled her in making the deeds or to question them because inequitable and unjust. *Carl v. Gabel*, 120 Mo. 296.

But in an inquiry whether the execution of the deeds was the free and voluntary act of the grantor, or was the result of improper influence of the defendants, the character of the transaction, the physical and mental weakness of the grantor and the relationship of the parties to each other can not be ignored. Indeed "wherever two persons stand in such a relation as that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of the position will not be permitted to retain the advantage, although the transaction could not have been impeached if no confidential relation existed." 2 White and Tudor's Leading Cases in Eq., page 1156. See, also, *Hamilton v. Armstrong*, 120 Mo. 615; *Cadwallader v. West*, 48 Mo. 496.

Another well recognized principle may be stated in

this connection, which is, that one may be capable of making a will and yet incapable of making a contract. In making the latter his mind and will power necessarily come in contact with that of the other contracting party and may be unduly influenced or entirely overcome by it. A contract, therefore, by one of impaired mental and will power with one standing in confidential relations with him should be closely scrutinized to see that no improper advantage has been taken or undue influence exerted. The exertion of undue influence in such case may be pronounced from the nature of the contract and from an unfair and unreasonable advantage secured by it.

The deed to the "home place" which was worth $5,000 or $6,000 was made on the eighteenth of August, 1890, within a month or two after the grantor moved to the home of the grantees. Previous to that time the grantor had disposed of her property by will under which a fair and equitable division between her two daughters had been made. By these wills two facts are conclusively shown: *First*, that the testator understood that mode of disposing of her property, and, *second*, that she desired her daughters to share equally in it.

It is undisputed that when the old lady went to the home of the defendants she owned about four hundred acres of land, worth $10,000, at a low estimate, and some $3,000 in personal property, consisting chiefly of money and notes. She was, at the time, about eighty years old, and feeble in mind and body.

In these circumstances the first contract was made and a conveyance of the home place was secured. Her income from rents and interest was abundantly sufficient for her support. Now, the deed recites that the real consideration was that the grantees should support the grantor during her life. The deed further provides

that the grantees should have the possession and use of the property, but a failure to perform the conditions should operate as a forfeiture and the title should revert to the grantor. At or about the date of this transaction the grantor assigned and transferred to defendants a note for about $1,500, which was bearing interest at eight per cent per annum. The rental value of the land was $375 per year. The transaction can only be regarded and treated as a contract between these parties. The life of Mrs. Baker was limited at most to a very few years. She was feeble and helpless and seeking the care and affection of a daughter. Her mental condition and will were unequal to those of defendants and she was depending on them for a home and proper treatment.

That the contract thus secured was most unreasonable and unfair can not be doubted. From the character of the contract, the relationship of the parties, and the mental condition of the grantor considered alone we would be bound to draw the inference that improper influences were brought to bear in securing the deed.

. But defendants insist that the evidence shows that the proposition came from her voluntarily and she acted under the advice of counsel. This contention makes necessary an examination of all the evidence.

It appears from the testimony of Judge Herren that, on the day the deed was made, defendant Henry Baker brought the old lady to his home and left her there while he went out to transact some business. The witness said: "She told me she was living with her daughter and her son-in-law, and wanted to arrange her property so as to secure herself in a living, certain, and to compensate the parties that took care of her." She then told him what she wished to do and asked him if it could be done legally. The deed was then drawn under her direction. The witness further testified that she told him at the time that she had made no

contract with defendant, and he told her that the deed would not bind them unless they accepted it; that when defendant Henry Baker returned the deed was read over to him and he agreed to it, and it was then taken out to be read by defendant Martha. In a few days afterward Mrs. Lydia Baker in company with Henry Baker, returned to his office with the deed and told witness that both parties were willing to accept the deed; she then delivered it to defendant and told him to have it recorded.

This evidence shows that the deed was intended solely to compensate defendants for the support of the grantor; that she was not certain of securing "a living" unless she made provision by which defendants would be compensated; and unusual precautions to preserve evidence that the transaction was free and voluntary.

Soon after the execution and delivery of this deed Mrs. Martin commenced proceedings in the probate court the object of which was to declare the old lady incapable of transacting her business and to have a guardian appointed for her. This proceeding was dismissed before coming to a trial. The evidence tends to prove that the old lady was much incensed at her daughter for this effort to have her declared of unsound mind.

Prior to her moving to the home of defendants, Castle, who had married her granddaughter, had been acting as agent of the old lady, under power of attorney, in the transaction of her business. Soon after, this power of attorney was revoked and the business was taken out of his hands. Certain notes he held for collection were placed in the hands of Judge Herren. Who took charge of her other business does not definitely appear.

The second deed was made on March 10, 1891.

On that day defendant Henry Baker took Judge Herren from Savannah out to his home, about fourteen miles. At that time two deeds were prepared, one for each of the daughters, which were signed and acknowledged by the old lady the next day. The land conveyed to defendants was much more valuable than that conveyed to plaintiff. The latter was unimproved and was estimated at $10 or $15 per acre; the former was improved and was estimated at from $20 to $25 per acre. It appears that the land described in the deed to plaintiff was timber land and a life estate only was given her and she was not permitted to cut or sell the timber. It seems to have been understood at the time that plaintiff would refuse this deed. It was afterward offered her and she did decline to accept.

On the twenty-fifth of May following defendant Henry Baker again took Judge Herren out to his farm when a disposition of all the remaining property of the old lady was made; at which time also defendants arranged an equal division of the property between themselves as has been heretofore stated.

At that time a will was prepared for the old lady, by which all her remaining property was given to defendant Martha Baker. This will recited that the testatrix had disposed of all her real estate, and that she had fully provided for her daughter Mary Martin, plaintiff herein. Defendant Henry Baker was appointed executor.

The will of Martha Baker recited that her mother and sister were her only heirs at law; that she and her husband had provided by contract for the support of her mother during her life and she needed nothing; that her sister Mary Martin had received a good estate from her father equal to what she herself had received. The will then contained this statement: "I desire to state here that I have no ill will, hatred, malice, or

hard feeling toward my said sister Mary nor any of her children, but bear toward her only a sister's love and good feeling and the same for all her children; but for reasons not necessary to state, my will and devise is that no property, either real or personal property of which I may die the owner, or shall be entitled to in any manner, shall go to my sister Mary Martin or any of her children after my death." She then devised to her husband all of her property and in case he should die first to one Otto Bly absolutely. Judge Herren was and had long been counsel for defendant Henry Baker and was greatly trusted by the old lady Baker.

Judge Herren sold the land Mrs. Baker conveyed to him, and defendant Martha Baker cancelled the defeasance.

Herren says the land was retained by himself and partner as fee for legal services in defending this and other suits, the amount he received being $600. A deed from Herren recited a consideration of $3,600 and the grantee borrowed $2,200 on it.

The evidence shows conclusively that defendants and Judge Herren in these transactions got from the old lady property worth $15,000 and left her with nothing but a bare agreement for support during life. The evidence tends strongly to prove that old Mrs. Baker never left home except in the company of one or both of defendants. It shows that defendant Henry Baker not only selected the attorney who should prepare the deeds and wills, but chose the officers before whom the deeds should be acknowledged and the witnesses to the wills. It shows that the circumstance of plaintiff having made application to the probate court for the appointment of a guardian for Mrs. Baker was used to keep in existence a prejudice against her.

The transactions themselves in their details show such care to preserve evidence and to show fairness as

to create almost a conclusive inference that an unfair advantage was being taken. Take the first transaction, that of August, 1890. Mrs. Baker was taken by defendant to Judge Herren's home in Savannah and left with him. He is the only witness of what transpired there. She told him she wished to so arrange her property as to secure to herself a living and to compensate the parties who took care of her. Her counsel proposed the plan by which this could be done. That seems fair enough. After he had written the deed and contract he read it over to her two or three times to be certain that she understood it perfectly. When defendant came in he read it to him to see if he would accept it. She was then told to take it to her daughter for her examination and approval. In a few days Henry brought her back with the deed signed and acknowledged; she reported that her daughter accepted. Her attorney then read it over to her again to be sure she understood it, and finding that she did, he told her it could be delivered to her son-in-law, which was then done.

Now, when we consider that this deed conveyed land worth $5,000 or $6,000, and which was then renting for $375 per year, for the support of a lady enfeebled by age and sickness, when her income was abundantly sufficient for her support—when we consider the assiduous care used in order to make it appear to be her own free act, we are irresistibly forced to the conclusion that the attorney was acting in the interest of defendants in carrying forward their purpose of securing this property.

Defendants had previously lived with their mother on the home farm, and left it, and her, as she stated to others, because she would not convey it to them. Mrs. Baker, whose age and infirm health appealed to her daughter for sympathy, was not certain of a permanent

home with defendants, for she said she wanted the advice of her attorney as to how she could arrange her property so as to secure one. There can be no doubt that securing a home was conditioned upon making this deed, and she had been so informed.

It must be remembered that this transaction took place before the effort of plaintiff to have her mother declared incapable of attending to her own business. Up to that time Mrs. Baker's equal love for her daughters, and her desire to treat them impartially in the distribution of her estate, appears from the wills she had previously executed. By this deed nearly one half her estate goes to one daughter. This transaction, in the circumstances, shows, not only the exercise of undue influence, but the exercise of moral duress equivalent to physical force. This transaction may well be taken as the key to those that follow, by which defendants secured the remaining property.

The timber land deeded to plaintiff could not be improved or cultivated without clearing off the timber, yet the deed contained such restrictions that no timber could be cut, either for sale or for preparing the land for cultivation. So it was perfectly useless to plaintiff, and the parties understood it would probably not be accepted, for the officer was directed to read it over to plaintiff, and if she refused to accept, to return it to the grantor. Plaintiff did refuse to accept, but the officer did not return it, and defendant Henry Baker went for it. The execution of this deed was only to show a pretense of fairness.

The transactions of May 25 established very conclusively that defendants intended that all the property should be enjoyed between them, and that neither plaintiff nor her children should ever come into possession of any of it. Defendant Martha, while possessing a true love and devotion to her sister, and her sister's

children, expressly declared that none of them should receive any part of her estate, and in case she survived her husband, that her entire estate should go to a stranger in preference.

The old mother in her will is made to recite that she had fully provided for her daughter Mary Martin, when it was only shown that she had furnished her $300 to assist in defraying the cost of some litigation in Colorado, long prior to the execution of the wills heretofore mentioned. The evidence shows that the testatrix when in good health and uninfluenced, was a noble, just, fair, and truthful woman.

But finally one tract of the land went to Judge Herren himself, the attorney whom she had reason to suppose represented her in all these various transactions, and in whom she confidently relied. The land was conveyed to him and he gave back a defeasance, not to the grantor, but to defendant Martha, by which he declared in effect that he held the title for defendant Martha Baker. This defeasance was afterward surrendered by said defendant to the counsel, who, we are satisfied, represented the defendants in all these transactions.

We will not comment further. The relation of deceased to the defendants, her dependence on them, and the character of these transactions, convince us that the deeds in question were secured, directly or indirectly, by the improper and undue influence of defendants. The judgment is affirmed. All concur, except BRACE, C. J., who is absent.