Agnes B. JACKSON, Respondent,

v.

Susie Alice TIBBLING, Appellant.

No. 45704.

Supreme Court of Missouri, Division No. 2.

Jan. 13, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied March 10, 1958.

Robert B. Vaughan, Kansas City, for appellant.

William J. Burrell, William G. Dietrich, Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, for respondent.

STOCKARD, Commissioner.

Defendant, Susie Alice Tibbling, has appealed from a judgment of the circuit court declaring a constructive trust on Lots 98 and 99 in East Hollywood Subdivision, Jackson County, Missouri, in favor of plaintiff, Agnes B. Jackson. Plaintiff is the widow of John S. Jackson, and defendant is the widow of Ernest F. Tibbling. The circumstances giving rise to the present difficulties arose subsequent to the death of Mr. Jackson in September 1949.

Mr. and Mrs. Jackson owned several tracts of real estate by the entirety, including the property in question on which was located the house in which they lived. In July 1950, about nine months after the death of her husband, plaintiff executed and delivered to Mr. Tibbling a deed which on its face purported to convey the fee, subject to a life estate in plaintiff, to the property in question. Plaintiff contends that this conveyance was made in consideration of the promise by Mr. Tibbling that he would, by will, devise the property back to plaintiff in the event he died first. Mr. Tibbling did make such a will, and he died before plaintiff, but shortly before his death he revoked the will and conveyed the property to his daughter who in turn conveyed it to defendant. It is plaintiff's position that an express trust was created, or in the alternative, that the circumstances compel the imposition of a constructive trust in her favor. We shall make a rather complete statement of the circumstances.

Mr. Tibbling and Mr. Jackson, both successful business men, had been very close friends for about 27 years. In May 1949, Mr. and Mrs. Jackson made reciprocal wills, and in each will Mr. Tibbling was named as successor executor. Following the death of Mr. Jackson in September 1949, plaintiff, who was then about 75 years of age, lived alone in her home, but she relied on the members of the Tibbling family for help. They did her grocery shopping for her, and according to defendant, "we were there [plaintiff's home] at least twice a week and sometimes more." Defendant further testified that they did "everything that they could" for her. Defendant "always" cooked Sunday dinner at her own home and took it to plaintiff's home to serve. The evidence indicates that following the death of her husband, plaintiff turned to Mr. Tibbling for assistance in matters previously handled by her husband, and that he did many personal errands and favors for her. Apparently plaintiff attempted to reciprocate to some extent by purchasing various items for the Tibbling home, and in 1950 she paid $1,500 on the purchase of a new automobile by Mr.

Tibbling. Defendant indicated at the trial that she did not regard these gestures in the same spirit as we presume plaintiff made them.

Mr. Jackson was designated as plaintiff's deputy with authority to enter her safe deposit box in the Mercantile Safe Deposit Company, and he handled her business affairs for her. After the death of her husband, plaintiff disposed of some of her real estate, including a farm in Cass County, Missouri, apparently because she was not able to look after the property adequately. The H & H Sales Company was her agent to sell the farm, but in connection with that sale Mr. Tibbling and plaintiff on two occasions prior to July 22, 1950, drove to Harrisonville to confer with Mr. Leslie M. Crouch, an attorney who had handled legal work for Mr. Jackson over a period of years and who had drawn the wills for Mr. and Mrs. Jackson in 1949. On the first trip, Mr. Crouch examined a contract for the sale of the farm, and on the second trip he examined a proposed deed to the farm.

On July 22, 1950, which was about nine months after the death of Mr. Jackson, plaintiff appointed Mr. Tibbling as her deputy with authority to enter her safe deposit box at the Mercantile Safe Deposit Company. Subsequent thereto, Mr. Tibbling signed admission slips on two occasions to obtain access to plaintiff's box, and plaintiff signed admission slips on several occasions under circumstances which tended to indicate that Mr. Tibbling might have been with her. For some undisclosed reason this safe deposit box was surrendered on August 4, 1952, and on the same day plaintiff rented a safe deposit box at the Commerce Trust Company. She again designated Mr. Tibbling as her deputy with authority to enter this box, but there is no evidence that he ever did so. On the afternoon of July 22, 1950, the same day that plaintiff first designated Mr. Tibbling as her deputy, both of them went to the office of Mr. Crouch in Harrisonville.

Plaintiff told Mr. Crouch that she wanted to convey her home to Mr. Tibbling, and that she wanted "a paper" drawn so that if Mr. Tibbling survived her the property would be his but that if she survived him the property would revert to her. There were some expressions by plaintiff to the effect that she and Mr. Tibbling had been friends for a long time and that he had done a lot for her, and also some expressions on the part of Mr. Tibbling that plaintiff had done "a great deal for us" and that plaintiff did not owe him anything. Mr. Crouch advised plaintiff against conveying away her property during her lifetime, and he suggested that to accomplish her announced purpose she should change her will to provide that the property would go to Mr. Tibbling if he survived her. Plaintiff and Mr. Tibbling said they would think the matter over and then left. On July 28, they returned to Mr. Crouch's office and Mr. Tibbling stated that plaintiff wanted to go ahead with the transfer of the property. Mr. Crouch again suggested the use of a will to accomplish the stated purpose, but plaintiff stated that when she and her husband had made their wills "we stated that we wouldn't change them." Mr. Crouch stated that he would not make any deed unless he had "very positive assurance of the fullest protection." During the conversation Mr. Tibbling stated that he could give "a deed back to her for the home, and not put it on record," or that he could make a will. Plaintiff expressed satisfaction with the proposal that Mr. Tibbling make a will in which he provided that the property should go to plaintiff in the event he died first, and she stated, according to Mr. Crouch, that "I feel that I am protected to the extent that if you [Mr. Tibbling] die first, it is still mine, and if I die first, I am willing for you to have it." Mr. Crouch then prepared a deed from plaintiff conveying to Mr. Tibbling the property in question, but reserving in plaintiff a life estate, and he also prepared a bill of sale for the household goods but reserving to plaintiff the use thereof during her

lifetime. He also dictated, in the presence of plaintiff and at the request of Mr. Tibbling, the terms of a will for Mr. Tibbling in which the second paragraph was as follows: "To Mrs. Agnes B. Jackson, address 10020 30th Terrace, Kansas City, 3–E Missouri, in event she survives me, I give, devise and bequeath all of Lots 98 and 99, in East Hollywood, a subdivision of land in Jackson County, Missouri, and contents of every kind and description located and being in the home on said property." It was provided in paragraph three of the will that all the rest, residue and remainder of Mr. Tibbling's property was to go to his wife "including the property described in paragraph two of this will, in the event Mrs. Agnes B. Jackson fails to survive me." In the fourth paragraph, it was provided that if Mrs. Tibbling did not survive him, all of his property and estate should go to his two daughters, or to the survivor, and that "The bequest in this paragraph of my will to my beloved daughters is subject to the provisions made to Mrs. Agnes B. Jackson in paragraph two of this will in the event she survives me."

The deed was delivered by plaintiff to Mr. Tibbling, and it was recorded on August 2, 1950. Mr. Crouch told plaintiff to keep the bill of sale. The will was subsequently prepared in final form and mailed to Mr. Tibbling who properly executed it on August 3, 1950. Following the death of Mr. Tibbling this will was found in the safe deposit box of plaintiff at the Commerce Trust Company, and plaintiff testified that she did not place it there. On August 3, 1950, Mr. Tibbling sent Mr. Crouch his fee for preparing the will, and in the accompanying letter stated: "I am sure that this will take care of the situation which we discussed in your office, and which I was primarily interested at this time."

On February 19, 1951, plaintiff signed a letter addressed "To Whom it May Concern" in which she stated that she was then past seventy-six years of age; that she had no relatives except nieces and nephews whom she scarcely knew, and that she never lived near any of them, and that they had never done anything for her; that she had no reason to think that she would live many more years; and "therefore, my wishes are that when I die * * * Mr. and Mrs. Ernest F. Tibbling who now reside at 3919 Sunrise Drive, Kansas City, Mo., will take complete charge of my body, call the funeral director and a doctor if necessary, select my casket and clothing which they think suitable and make all funeral arrangements." She then made a request for two particular funeral songs, and concluded by stating, "I would want for them [Mr. and Mrs. Tibbling] to dispose of the furnishings of my home as I have directed— My home I have deeded to Ernest F. Tibbling for their very great to me [sic] * * hopeing they will make it their home—I have complete confidence that they will carry out my wishes to the letter." The occasion for the writing of this letter is not disclosed, but it was introduced in evidence by defendant.

Mr. Tibbling was hospitalized on October 11, 1953, and he died of cancer on December 10, 1953. About a month prior to his death, but while he was hospitalized, Mrs. Tibbling, the defendant, went to Mr. Robert B. Vaughan, an attorney who had represented Mr. Tibbling over a period of years, and at her request Mr. Vaughan prepared a quitclaim deed to the property in question from Mr. and Mrs. Tibbling to Jean Davis, a daughter; a quitclaim deed from Jean Davis and her husband to defendant, *as a single person;* and a will for Mr. Tibbling which revoked all prior wills and which left all of his property to Mrs. Tibbling with no specific mention of the property in question. On December 1, 1950, Mr. and Mrs. Tibbling executed the quitclaim deed purporting to convey the property to Jean Davis, and Mr. Tibbling executed the will. Two doctors and two nurses acted as witnesses. Although the only testimony was that Mr. Tibbling was mentally alert and fully competent at the time, he was so weak physically that it was necessary for

Jean Davis to help him raise his arm to sign the two instruments. The quitclaim deed purporting to convey the property to Jean Davis was recorded on December 16, 1953, six days after the death of Mr. Tibbling. On December 17, 1953, Jean Davis and her husband executed the quitclaim deed which was prepared about a month before the death of Mr. Tibbling and which purported to convey the property in question to defendant as a single person. This deed was recorded on December 21, 1953. When plaintiff found the will of Mr. Tibbling, which had been prepared by Mr. Crouch, in her safe deposit box, she delivered it to her attorney and it was filed in the probate court on February 4, 1954, and this suit was filed on February 6, 1954. The will executed by Mr. Tibbling while he was in the hospital was not filed in the probate court until July 22, 1954.

Following the death of Mr. Tibbling, keys to plaintiff's safe deposit box and house were found on his key ring, and the keys were returned to plaintiff by defendant.

At the trial, defendant invoked the dead man's statute and there is no testimony by plaintiff concerning the circumstances of the execution of the deed from her to Mr. Tibbling.

■ In this equity action we must determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues, and reach our own conclusions based upon that evidence, although we may defer to the finding of the trial judge where there is conflicting oral testimony involving a determination of the credibility of witnesses who appeared before him. Hussey v. Robison, Mo.Sup., 285 S.W.2d 603.

■ The testimony of Mr. Crouch, together with the terms and the circumstances of the execution by Mr. Tibbling of the will dated August 3, 1950, clearly establish that plaintiff transferred the property, subject to the life estate, to Mr. Tibbling in consideration of an oral agreement or promise by him that he would by will devise the property to plaintiff in the event he died first. The provisions of the will indicate the intention of Mr. Tibbling, at the time of its execution, to carry out what the evidence shows to have been the oral agreement. But, the provisions of the will, when considered alone, or considered together with the provisions of the deed, do not contain an agreement to reconvey the property, nor do they contain any declaration of an express trust. The terms of the will, absent the parol evidence, are consistent with a voluntary devise on the part of Mr. Tibbling, which, of course, was subject to revocation during his lifetime. Therefore, when the oral arrangement between plaintiff and Mr. Tibbling is considered as an express agreement to convey real estate, it is unenforceable by reason of the Statute of Frauds, Section 432.010 (all statutory references are to RSMo 1949, V.A.M.S.), and when considered as an express trust, it is "void" by reason of Section 456.010.

■ Plaintiff also contends, and defendant denies, that the circumstances gave rise to a constructive trust in her favor. In this connection we should first dispose of several of defendant's contentions. She vigorously asserts that the testimony of Mr. Crouch was inadmissible because it constituted an attempt to establish an express trust by oral evidence, and also because it constituted an attempt to vary the terms of the deed from plaintiff to Mr. Tibbling. Our ruling that the evidence does not establish an express trust makes unnecessary further discussion of the first part of defendant's contention. As to the second contention, a constructive trust is within the provisions of Section 456.030 which exempts implied trusts from the effect of the Statute of Frauds. Swon v. Huddleston, infra; Strype v. Lewis, 352 Mo. 1004, 180 S.W.2d 688, 155 A.L.R. 99. Therefore, a constructive trust may be proved by parol evidence. Defendant cites four cases in which it was held that a party could not by parol evidence vary the terms of a written instrument, including a deed, but none of

the cases pertain to the proof of a constructive trust. The testimony of Mr. Crouch was admissible to prove the elements of a constructive trust, and for such purpose we shall consider it, but not for any other purpose.

Defendant also vigorously asserts that there was "no fraud prior to or contemporaneous with the execution of the deed" from plaintiff conveying the property to Mr. Tibbling; that there was no mistake on the part of the parties; that there was no undue influence on the part of Mr. Tibbling in obtaining the deed; that there was no evidence that Mr. Tibbling breached any confidential relation "when plaintiff deeded him the property in question," and that plaintiff did not prove that at the time of the alleged agreement of Mr. Tibbling to devise the property by will to plaintiff in the event she survived him, he did not intend to keep that agreement. Defendant is correct as to these contentions, but it is our opinion that they are not determinative of this case.

The rule here applicable is found in Basman v. Frank, Mo.Sup., 250 S.W.2d 989, 993, wherein the following quotation is made with approval from the American Law Institute, Restatement of Restitution, § 182: " 'Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if (a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution, or (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or (c) the transfer was made as security for an indebtedness of the transferor.' " The court then quoted with approval a portion of the comment under the above section as follows: " 'Where the

owner of an interest in land transfers it to another who orally agrees to hold it in trust for the transferor or to reconvey it to the transferor, and the transferee at the time of the transfer was in a confidential relation to the transferor, the transferee will not be permitted to keep the land but will be compelled to hold it upon a constructive trust for the transferor, since otherwise he would be unjustly enriched.' "

The cases cited by defendant, and the greater part of her argument, pertain to factual situations referred to in part (a) above. But, plaintiff contends that the circumstances of this case place it within the rule announced in part (b). If this is correct, it is the well established rule that such circumstances authorize a court of equity to impose a constructive trust on the property in favor of plaintiff. See Swon v. Huddleston, Mo.Sup., 282 S.W.2d 18; Trieseler v. Helmbacher, 350 Mo. 807, 168 S.W.2d 1030; Vol. 3, Scott on Trusts, 2d Ed., § 462; Vol. 3, Bogert, Trusts and Trustees, §§ 495, 496; 54 Am.Jur., Trusts, § 233; 89 C.J.S. Trusts § 149; Restatement of Trusts, § 44; 35 A.L.R. 310, 45 A.L.R. 854; 80 A.L.R. 204; 129 A.L.R. 695; 159 A.L.R. 1008.

■ We are convinced that the evidence clearly establishes the existence of an oral agreement on the part of Mr. Tibbling to devise the property by will to plaintiff in the event he died first. The evidence also establishes that Mr. Tibbling executed his will containing such a provision and that he subsequently breached his oral agreement by the revocation of the will and the execution of the deed conveying the property to his daughter. This leaves only the question of whether at the time of the conveyance Mr. Tibbling was in a confidential relation to plaintiff.

■ Unfortunately there can be no precise rule to determine when a confidential relation exists. Every case must be considered separately, and the well settled but general rules must be applied to the particular facts of each case. Previously decided cases, other than as a source of the

general rules, can be of only limited value because of the difference in factual situations. In addition, in cases such as this, where one party is dead and the lips of the other are sealed by the dead man's statute, proof of the existence or absence of a confidential relation must depend to a certain extent upon conclusions necessarily to be drawn from the circumstances. But, we are not unmindful of the rule that the finding of facts from parol evidence which justify the imposition of a constructive trust must be based upon evidence which, to use a common and probably overworked phrase, is clear, cogent and convincing so as to exclude all doubt from the mind of the court. Trieseler v. Helmbacher, supra; Swon v. Huddleston, supra.

In Restatement of Restitution, § 182, it is stated that "A confidential relation exists not only where there is a fiduciary relation such as that between attorney and client, trustee and beneficiary, guardian and ward, partner and partner, and the like, but also where, because of family relationship or otherwise, the transferor is in fact accustomed to be guided by the judgment or advice of the transferee or is justified in placing confidence in the belief that the transferee will act in the interest of the transferor." See also the comment on what constitutes a confidential relation in Restatement of Restitution, § 166 at pages 676–677. In a suit to set aside a deed because of undue influence arising out of a confidential relationship, this court in quoting from Selle v. Wrigley, 233 Mo. App. 43, 116 S.W.2d 217, stated that "'a confidential relation exists between two persons, whether their relations be such as are technically fiduciary or merely informal, whenever one trusts in and relies on the other. The question in such case is always whether or not trust is reposed.'" Hedrick v. Hedrick, 350 Mo. 716, 168 S.W. 2d 69, 74. See also Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493; Martin v. Baker, 135 Mo. 495, 36 S.W. 369; Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842; Horn v. Owens, Mo.Sup., 171 S.W.2d 585; Trieseler v. Helmbacher, supra; Sewell v. Ladd, Mo.

App., 158 S.W.2d 752; Vol. 3, Bogert, Trusts and Trustees, § 482; 89 C.J.S. Trusts § 151b; Restatement of Trusts, § 44, at pages 137–138. These cases pertain to suits to set aside a will or deed because of undue influence, which is not present in this case, but they also all involve the question of whether there existed a confidential relation.

■ There could hardly be a relation more confidential on the part of Mr. Tibbling to plaintiff than that evidenced by plaintiff's designation of him as her deputy with authority to enter her safe deposit box. It is thus evident that plaintiff placed the utmost confidence and trust in Mr. Tibbling in reference to her business affairs. In addition, the evidence clearly shows that after the death of her husband, plaintiff turned to Mr. Tibbling for help, and there is no evidence that she went to any one else other than Mr. Crouch who advised her on legal matters. It is also evident that she did not always follow the advice of Mr. Crouch and that she did follow, at least in this case, the suggestion of Mr. Tibbling. She refused to heed Mr. Crouch's warning concerning the transfer of her property in this case, and she did follow the suggestion of Mr. Tibbling to the effect that her wishes would be carried out if she conveyed the property to him and he in turn devised the property to her by will in the event he died first. When we give careful consideration to the rule pertaining to the imposition of a constructive trust as set forth in Restatement of Restitution, § 182(b), and as approved in Basman v. Frank, supra, and when we give what we consider to be the proper consideration to the combination of circumstances and events shown by the evidence in this case, including the relation of Mr. Tibbling to the Jackson family, the naming by plaintiff of Mr. Tibbling as successor executor of her will, the appointment by plaintiff of Mr. Tibbling as her deputy, the reliance of plaintiff on Mr. Tibbling for the numerous things previously done for her by her husband, and the age of plaintiff and her inexperience in business matters, we are

constrained to reach the conclusion that at the time of the conveyance Mr. Tibbling stood in a position of confidence to plaintiff. Compare the relation of Steininger to Mrs. Knight in Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59, and the relation of Powell to Mrs. Shannon in Clark v. Powell, supra, which were held to be positions of confidence. We also conclude that because of this confidence plaintiff relied on Mr. Tibbling's oral agreement, and that the circumstances here authorize and require the imposition of a constructive trust on the property in favor of plaintiff.

Defendant is not and does not claim to be a bona fide purchaser for value, and she does not claim to have any right to the property that would not have been possessed by her husband. Therefore, the judgment of the trial court should be and is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.