Jack Charles BEASLEY, Appellant,

v.

Shannon Marie Lattner BEASLEY, Respondent.

Nos. KCD 28695 and 28716.

Missouri Court of Appeals, Kansas City District.

June 27, 1977.

---

James S. Cottingham, Independence, for appellant.

Lloyd S. Hellman, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from adverse judgment in action to set aside default divorce decree. The dispositive question is whether the decree was shown to have been a fraud on the court. Affirmed.

At the conclusion of the hearing, Mrs. Beasley requested, and the court filed "a brief opinion containing a statement of the grounds for its decision" which includes its findings of fact and conclusions of law, as provided in Rule 73.01.1(b), V.A.M.R.:

"This matter arise[s] out of an alleged commonlaw marriage between the parties during the year of 1969. Presently pending before the Court is a suit in equity to set aside the judgment entry entered by this Court on the 7th of December, 1970. The allegation is made by petitioner Jack Beasley that there was no marriage between the parties in 1969 or at any other time. * *

"Shannon Beasley filed a Petition for Divorce in this court against Jack Beasley * * * wherein she alleged in paragraph two of her sworn petition that she and Jack Beasley entered into a commonlaw marriage relationship in Wyandotte County, Kansas during [and through] the months of July and August, 1969. Born of that relationship was one child named Kelly Lynn Beasley. Mrs. Beasley prayed for a divorce, custody of the minor child, child support, alimony and attorney fees. The Petition for Divorce was served on Jack Beasley on the 23rd of October, 1970. Mrs. Beasley appeared in court with her attorney, who is now deceased. She offered testimony, under oath, to the effect that she and Jack Beasley entered into a commonlaw marriage arrangement in the state of Kansas and that born of their marriage relationship was one child. This evidence was presented to the Court on the 7th of December, 1970 and the judge entered an order divorcing the parties, awarding custody of the minor child to the mother, requiring the father to pay $25.00 per week and an award of alimony of $1.00 per month and attorney fees of $300.00. There was a general execution issued on the judgment for child support on the 4th of February, 1971, but some confusion exists as to whether it was effective. The garnishment [on Mr. Beasley's employer, Muehlebach Hotel] was released on the 8th of February.

"Considerable testimony was introduced into evidence on January 27, 1976 and February 24, 1976 on petitioner Jack Beasley's motion to set aside that decree. It is the opinion of this Court that most all of that testimony was inadmissible. Basically, Mr. Beasley claims that there was no commonlaw marriage under the laws of the state of Kansas. Simply stated Mr. Beasley was afforded an opportunity to present that evidence in 1970 and he failed to do so. His alleged conversation with Mr. Henry, Mrs. Beasley's attorney in 1970, was inadmissible because in violation of the Dead Man's Statute. Nevertheless, whether admissible or not it does not excuse Mr. Beasley from allowing the matter to go by default. At least under his evidence he was aware of the divorce, award of custody and child support within three months after the entry of the decree. He did nothing until some five (5) years after the judgment was entered and only then when he was threatened by criminal action in the state of Kansas for failure to support the minor child. The evidence on laches that was presented by the respondent is persuasive and a clear example of the lapse of time working to the detriment and prejudice of one party. A good deal of evidence that would possibly be available to prove that there was a commonlaw marriage under the laws of Kansas is lost by the passage of time.

"Based upon the evidence now presented to this Court, it is not at all clear that there was a relationship sanctioned by the state of Kansas that would have allowed this Court to grant a divorce. In fact, the evidence preponderates in favor of facts tending to establish no commonlaw marriage. But many facts have been lost due to the passage of time and, further, and more significantly, Mr. Beasley was afforded the opportunity to present those facts and he didn't. At some point in time there must be some finality to the disputes between people. In this case it has occurred after five years have expired. This might not have been true while the court still retains jurisdiction in the thirty days following its judgment entry or even three months following the entry.

" * * * a Petition for Divorce was filed by Mrs. Beasley October 9, 1970, * * * it was sworn to, * * * it was shortly thereafter served personally on Mr. Beasley, * * * the judgment entry was made on the 7th of December, 1970 as hereinbefore described and * * * Mr. Beasley failed to respond at any time to the petition or the entry of a judgment against him for five years thereafter.

" * * * the petitioner is guilty of laches in failing to take any action on this judgment for over five years and further, * * * there is no 'extrinsic fraud' committed by respondent.

"Therefore, petitioner's petition to set aside the judgment entry of the 7th of December, 1970 between the same two parties in this court is denied and judgment entered in favor of the respondent and against the petitioner."

Appellant contends his petition to set aside the decree should be sustained, asserting that he showed: (A) Mrs. Beasley perpetrated a fraud on the court in the divorce proceedings by reason of false allegation of marriage in her summons, petition for divorce, and testimony; (B) she fraudulently induced his default; (C) he has a meritorious defense to the petition for divorce and good reason or excuse for his default; (D) the original decree was a nullity and void for want of jurisdiction. He contends also that he is not barred by laches.

■ The case is for review upon both the law and the evidence with due regard to be given the opportunity of the trial court to have judged the credibility of the witnesses. See Rule 73.01.3(a), (b), V.A.M.R., and its construction, *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The foregoing demonstrates an absence of the fraud asserted by Mr. Beasley as ground for setting aside the divorce decree awarded Mrs. Beasley.

■ Appellant's argument A is on the facts and the weight of the evidence. The allegation in Mrs. Beasley's divorce petition of a common-law marriage from which she sought to be divorced is clear, and she introduced evidence at the hearing on her petition in proof of it. As noted by the trial court, a different view of the relationship between Mr. and Mrs. Beasley might have surfaced in the divorce hearing had Mr. Beasley presented different or conflicting facts at the time of the divorce. Although duly notified, he chose not to put the facts in issue, made the same choice some three months after entry of the divorce decree, and chose to remain silent until the child support issue arose some five years later. The trial judge was warranted in treating Mr. Beasley's charge of fraud as a too long-delayed afterthought. Appellant cites *McGrath v. McGrath*, 387 S.W.2d 239 (Mo. App.1965), and *Sigwerth v. Sigwerth*, 299 S.W.2d 581 (Mo.App.1957). Their distinctions demonstrate the weakness in his position. In the first case, the question of common-law marriage was put in issue by the pleadings, was tried by the court, and in absence of proof of the relationship, there was no marriage upon which to grant temporary allowances for alimony and attorney's fees. In the second, a default divorce decree was set aside upon motion filed barely a month after the decree because defendant had not been personally served and the motion alleged and its proof showed that the divorce plaintiff had never been a resident of Missouri for purpose of jurisdiction.

■ Appellant's argument B is that he, upon receiving Mrs. Beasley's petition for divorce and summons, thought of himself as a single man and was defrauded into default by Mrs. Beasley's attorney who, upon his inquiry, allegedly told him he would get further notice of the hearing date. The court's refusal of testimony of any conversation with Mrs. Beasley's deceased attorney was proper under her objection based on the Dead Man's Statute, Section 491.010, RSMo 1969. *Johnson v. Dur-Est, Inc.*, 224 S.W.2d 611 (Mo.App.1949). Cf. *Jackson v. Tibbling*, 310 S.W.2d 909, 914, 915 (Mo. 1958).

■ Appellant's argument C is that the court recognized he had a meritorious defense, and that he was excused from his default on account of the matters previously discussed and as shown by provisions for notice of entry of a default decree contained in the Dissolution of Marriage Law in Section 452.320, RSMo., effective January 1, 1974. His difficulty is that the trial court did not find, and it is not shown, that Mr. Beasley had a meritorious defense. The trial court, at best, expressed only that proof "now presented" is "unclear" as to the 1969 relationship between the parties. Section 452.320, supra, was not in force in December 1970; nevertheless, it appears that Mr. Beasley was afforded notice of the entry of Mrs. Beasley's divorce decree.

Appellant's argument D is that a default divorce decree may be set aside if the court which granted the divorce did not have jurisdiction to do so even in the absence of fraud or excusable neglect. See *Wenzel v. Wenzel*, 283 S.W.2d 882 (Mo.App. 1955), where jurisdictional defects on the face of the record, not sounding in fraud, were said to give rise to after-term direct attacks on the jurisdiction of the court ab initio to render a judgment. The difficulty is that there are no jurisdictional defects on the face of the record in this divorce hearing, and application of the above principle to this case would require an acceptance of Mr. Beasley's belated version of the facts as conclusive. Such is contrary to the proposition that "every presumption will be indulged in favor of the jurisdiction of the court over the subject matter and of the persons, unless the record affirmatively shows to the contrary." *Orrick v. Orrick*, 241 Mo.App. 143, 233 S.W.2d 826, 828[4] (1950).

With respect to laches, suffice to say, "In all cases where actual fraud is not made out, but the imputation rests upon conjecture, where the seal of death has closed the lips of those whose character is involved, and lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence." *Hammond v. Hopkins*, 143 U.S. 224, 274, 12 S.Ct. 418, 435, 36 L.Ed. 134 (1892). See also *Brandt v. Manson*, 207 S.W.2d 846 (Mo.App.1948).

Judgment affirmed.

All concur.